UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Meng Yang, individually and as parent and
natural guardian of Laura Tia Yang, a
minor,

Civil No. 04-4378 (PAM/JSM)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

St. Paul Public Schools; Jeri Pumroy,
individually and in her capacity as a St.
Paul Public Schools employee; Dorette
Lindorfer, individually and in her capacity
as a St. Paul Public Schools employee;
City of St. Paul; St. Paul Police
Department; and Yusuf Norris, in his
capacity as a St. Paul Police Officer;

Defendants.

---

This matter is before the Court on Defendants St. Paul Public Schools, Jeri Pumroy, and Dorette Lindorfer's Motion for Summary Judgment; Defendant City of St. Paul's Motion for Summary Judgment; and Plaintiffs' Motion to Accept Untimely Filing of Plaintiffs' Opposition to Defendants' Motions for Summary Judgment. For the reasons that follow, all of the Motions are granted.

**BACKGROUND**

The factual background is recounted in the light most favorable to Plaintiffs, the non-moving party. Plaintiff Meng Yang is the father of Laura Tia Yang. Laura is a special education student, who was in third grade at Maxfield Elementary School in St. Paul, Minnesota, in September 2002 when the relevant events occurred. Laura has a teacher's aide to assist her in

class.   Laura's primary language is Hmong, but she speaks English exclusively at school and with her brothers and sisters at home.

During the evening of Sunday, September 15, 2002, Laura injured herself while using a treadmill at her home.   Her father had purchased the treadmill for Laura at her doctor's urging because she was overweight.   Laura cannot exercise outside because she has severe reactions to mosquito bites.   Usually, a family member helps Laura use the treadmill.   When Laura tried to use the treadmill unsupervised on September 15th, she fell, and the treadmill belt bruised and scratched her arms.

On Monday, September 16th, a teacher's aide, Defendant Dorette Lindorfer, noticed some "sores" on Laura's arms.   Laura said they hurt.   Lindorfer asked in English how Laura got the sores, and Laura said she fell.

The next day, on Tuesday, September 17th, Laura went to school as usual.   Lindorfer thought Laura's sores looked worse than the previous day.   Lindorfer described the wounds as "large bad patch type sores" and "some round sores that resembled burns."   According to Lindorfer, when she asked Laura about the sores, Laura said her father hit her with a belt and burned her.   She also said "very hot" and "hurt."   However, in her deposition, Laura denied making these statements, and thus, the Court must not consider them in evaluating this motion. Lindorfer took Laura to the school nurse and then to Defendant Jeri Pumroy, the school's social worker.   Pumroy notified the St. Paul Police Department of suspected child abuse or neglect.   No one at the school used a Hmong interpreter when talking with Laura even though a full-time Hmong interpreter works there.

2

After Pumroy called the St. Paul Police Department, Defendant Officer Yusuf Norris came to the school.  According to the officer, Laura said her father hit her with a belt and burned her.  Laura denied making these statements in her deposition, and the Court will not consider the statements in this motion.  Officer Norris and Laura spoke in English.  Officer Norris looked at the sores, which he thought resembled cigarette burns and wounds consistent with abuse.  He took Laura to Children's Hospital in St. Paul.  Hospital staff determined the circular sores were probably mosquito bites.  Officer Norris then contacted the Ramsey County Human Services Department Child Protection Unit to obtain instructions on where Laura was to be placed.  Officer Norris took Laura to the Buckner Shelter for a seventy-two hour placement.  Officer Norris attempted to reach Laura's parents at her home telephone number, but no one answered the telephone.  He did not leave a message because there was no answering machine or voicemail system.  Laura's sister, Ching Lo, testified in her deposition that she, her mother, and her siblings were home during the afternoon of September 17th at the time Officer Norris allegedly called.  In addition to Ching Lo, Laura, and their mother, three other siblings also lived at the home.

When Laura did not come home from school, Ching Lo called the school, the bus system, and the St. Paul Police Department.  No one knew where Laura was.  The police dispatcher said an officer would come to the family's home.  Eventually, Laura's mother, father, and sister went to the school to look for her.  The school was closed, and no one could inform them of the day's events or where Laura was.  Family members searched for Laura until late in the evening.  Laura's sister called the St. Paul Police Department again.  She was either

transferred or given another number to call for information about Laura.  She spoke with an unidentified person, possibly from the Ramsey County Child Protection Unit.  The person said that he or she knew where Laura was and that she was okay.  The person also said that he or she was unable to give any additional information and that the family would have to wait until the following day.

On Wednesday, September 18th, Laura's parents and Ching Lo met with a social worker at the school.  Laura's parents do not speak or understand English very well, but Ching Lo understands and fluently speaks English.  The sister acted as an interpreter for the parents.  The social worker described the parents as terribly anguished.  Laura's mother said Laura's injuries resulted from her careless use of a treadmill at home and a reaction to mosquito bites.

Laura met with Ramsey County Child Protection social worker Mary Bastian on Wednesday, September 18th.  Laura told Bastian that she injured her arm during a fall on her exercise machine at home.  She also said that her sores were from mosquito bites during a trip to the family farm.  Ultimately, Bastian found that no abuse had occurred.

On September 18th, Bastian also spoke with Laura's sister on the telephone and told her that Laura had been placed in a shelter while allegations of abuse were being investigated. Bastian went to Laura's home on Thursday, September 19th.  The family explained to Bastian that they had purchased an exercise machine for Laura because she was overweight, and Laura's arms were abraded by the treadmill belt when she tried to use the machine unsupervised and fell.  Bastian and Ching Lo brought Laura home on September 19th.

Plaintiffs are suing for violations of the Fourth and Fourteenth Amendment of the United States Constitution.   Plaintiffs have also brought claims under the Minnesota Constitution.

## DISCUSSION

### A.   Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c).   As the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).   The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.   Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.   Id.   A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B.   Dismissal of the St. Paul Police Department

The St. Paul Police Department seeks dismissal as a party on the grounds that it does not have the capacity to sue or be sued under Minnesota law. Federal Rule of Civil Procedure 17(b) states that the capacity of an entity to be sued depends on the law of the state in which the federal district court sits. Fed. R. Civ. P. 17(b). In Minnesota, city entities such as police departments do not have the power to sue or be sued. Hyatt v. Anoka Police Dep't, 700 N.W.2d 502, 505-06 (Minn. Ct. App. 2005) (citing Minn. Stat. §§ 412.111, 412.211 (2002)).

Here, the St. Paul Police Department is a department of the City of St. Paul. See St. Paul, Minn., Admin. Code ch. 8, § 8.01 (1972). Therefore, the St. Paul Police Department is not a legal entity subject to being sued. See Hyatt, 700 N.W.2d at 506; Maras v. City of Brainerd, 502 N.W.2d 69, 79 (Minn. Ct. App. 1993). Moreover, Plaintiffs have sued the proper entity, the City of St. Paul, and thus will not be prejudiced by dismissal of the St. Paul Police Department. See Lundak v. Nyseth, No. 04-4297, 2005 WL 2216313, at *1 (D. Minn. Sept. 12, 2005) (Tunheim, J.). The St. Paul Police Department is dismissed as a party in this case.

## C.     Service of Process on Officer Norris

Officer Norris seeks to be dismissed as a party, arguing that he was not properly served. In response, Plaintiffs provided an affidavit from a process server in Virginia who avers that he left a copy of the Summons and Complaint posted on the front door of 1201 South Scott Street, Arlington, Virginia, on August 2, 2005.

Officer Norris first challenges the method of service employed by Plaintiffs. However, service may be effected in accordance with the laws of the state in which a defendant resides.

See Fed. R. Civ. P. 4(e)(1).   The State of Virginia permits service of process to be accomplished by posting a copy of the summons and complaint on the front door of the residence of the person to be served.   Va. Code § 8.01-296(2)(b).   Officer Norris does not allege that the address at 1201 South Scott Street, Arlington, Virginia, is not his residence. The method of service utilized by Plaintiffs is permitted by Virginia law, and Officer Norris is not entitled to dismissal on this basis.

Officer Norris also challenges the timeliness of the service.   A court may dismiss a party without prejudice if he is not served within 120 days after the complaint is filed.   Fed. R. Civ. P. 4(m).   Here, the Complaint was filed in federal court pursuant to a Notice of Removal on October 8, 2004.   Service of process should have occurred by January 8, 2005, but was not made until August 2, 2005.   Plaintiffs did not seek an extension for service, and they have not explained why service was not timely made.   Thus,  Officer Norris is entitled to dismissal without prejudice.   However, even if the Court excused Plaintiffs' untimely service, Officer Norris is entitled to judgment on the merits, as discussed  below.

**D.     Plaintiffs' Federal Constitutional Claims**

Plaintiffs claim their federal constitutional rights were violated in several respects. They have brought Fourth Amendment and Fourteenth Amendment claims pursuant to 42

U.S.C. § 1983.[1]   Plaintiffs also claim that their substantive and procedural due process rights were violated.

>    1.    Qualified Immunity for Pumroy and Lindorfer

Pumroy and Lindorfer contend that they are entitled to qualified immunity.   Plaintiffs do not challenge the applicability of the defense of qualified immunity in their Memorandum in Opposition.[2]   Nevertheless, the Court finds that Pumroy and Lindorfer are immune from suit.

Because entitlement to qualified immunity "is an immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), the question of immunity must be resolved "at the earliest possible stage in litigation," Hunter v. Bryant, 502 U.S. 224, 227 (1991) (citations omitted) (finding the question appropriately decided on motion for summary judgment).   The Court must make a three-part inquiry to determine if Pumroy and Lindorfer are entitled to qualified immunity: (1) whether Plaintiffs have asserted a violation of their constitutional rights; (2) whether the allegedly violated constitutional rights were

---

[1]   Plaintiffs did not specifically invoke 42 U.S.C. § 1983 in the Complaint.   However, Count 1 references certain language of § 1983, "acting under color of law" (Compl. ¶ XXII), which the Court will liberally construe as a § 1983 claim.

Additionally, Plaintiffs stated at the hearing that when they filed the Complaint, they had not intended to plead any federal law claims; they intended to bring only claims under the Minnesota Constitution.   It is indeed surprising, therefore, that this case has proceeded to the summary judgment stage with Defendants believing that Plaintiffs have pled federal claims.   However, despite Plaintiffs' original intention, the Complaint does reference the U.S. Constitution, and the Court concludes that the case was properly removed to federal court.

[2]   Despite Defendants dedicating a large portion of their memoranda to the issue of qualified immunity, Plaintiffs' response focused heavily on the doctrine of official immunity under Minnesota state law.   Plaintiffs do not rebut Defendants' qualified immunity defense.

clearly established; and (3) whether there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged acts violated that right.  See Foulks v. Cole County, 991 F.2d 454, 456 (8th Cir. 1993).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Here, Plaintiffs' claims against Pumroy and Lindorfer fail for want of a constitutional violation.

a.     Plaintiffs' Fourth Amendment Claim

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend IV.  The Fourth Amendment is applicable to Defendants through the Fourteenth Amendment's Due Process Clause.  See, e.g., Mapp v. Ohio, 367 U.S. 643, 655 (1961).

Plaintiffs assert that Pumroy and Lindorfer did not have probable cause to believe that Laura was maltreated or abused, but they nevertheless detained her.  After Pumroy and Lindorfer saw Laura's wounds, Pumroy called the St. Paul Police Department and filed a Report of Suspected Student Maltreatment.  Plaintiffs have not provided any authority showing that the actions of these school officials constituted an unreasonable search or seizure.  In fact, Lindorfer and Pumroy acted pursuant to Minn. Stat. § 626.556, which requires education professionals to report suspicions of neglect or abuse.  Id., subd. 3.  The procedures mandated in § 626.556 were deemed constitutional by Bohn v. County of Dakota, 772 F.2d 1433, 1436-41 (8th Cir. 1985) (finding that the procedures did not violate the Fourteenth Amendment). Government officials may assume the constitutionality of a statute from its enactment unless

the law is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." <u>Michigan v. DeFillippo</u>, 443 U.S. 31, 38 (1979).  Here, not only has the Eighth Circuit found Minn. Stat. § 626.556 to be constitutional, but the Court also finds the statute is neither grossly nor flagrantly unconstitutional.

The Court further finds that Pumroy's and Lindorfer's actions were neither a search nor a seizure as contemplated by the Fourth Amendment.  Laura's injuries were in plain view, and there is no evidence she was forced to disrobe.  Neither Pumroy nor Lindorfer removed Laura from school or placed her at the shelter.  Although Laura might not have felt free to leave the school, she would not have been permitted to leave even if the school officials had not suspected child abuse or neglect.  Thus, the Court cannot conclude her freedom of movement was impermissibly restrained.  Moreover, based on the apparent nature of Laura's injuries, Pumroy and Lindorfer had a reasonable suspicion that Laura had been abused or neglected and that her health and safety were at risk.  Consequently, even if Defendants' actions could be considered a search or seizure, they were reasonable.

Finally, assuming Plaintiffs could establish a Fourth Amendment violation, they have not shown that the parameters of the right were so "clear that a reasonable official would understand that what he is doing violates that right." <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).  The unlawfulness of Pumroy's and Lindorfer's conduct is not apparent.  <u>See</u> <u>id.</u> Lindorfer and Pumroy are entitled to qualified immunity on Plaintiffs' Fourth Amendment claim.

b.      <u>Plaintiffs' Substantive Due Process Claim</u>

10

The Fourteenth Amendment protects individuals against state actions that deprive them of life, liberty, or property without due process of law.   U.S. Const. amend. XIV, § 1.   Here, Plaintiff Yang alleges his right to custody of Laura and to make medical decisions for her was violated when she was taken to Children's Hospital, examined, and placed in a temporary shelter.     Plaintiffs contend there is no compelling state interest justifying Pumroy's and Lindorfer's actions.

Parents and children have a Fourteenth Amendment liberty interest in each other's care and companionship.   Lehr v. Robertson, 463 U.S. 248, 258 (1983).   The right is not absolute, however.   Contrary to Plaintiffs' contention, the government does have a compelling interest in protecting minor children.     Myers v. Morris, 810 F.2d 1437, 1462 (8th Cir. 1987), abrogated on other grounds, Burns v. Reed, 500 U.S. 478, 496 (1991).   The liberty interest does not include a parental right "to be free from child abuse investigations."   Watterson v. Page, 987 F.2d 1, 8 (1st Cir. 1993) (quoted with approval in Thomason v. Scan Volunteer Servs., Inc., 85 F.3d 1365, 1371 (8th Cir. 1996)).   An official participating in such an investigation is entitled to qualified immunity if his or her actions were "properly founded upon a reasonable suspicion of child abuse."   Manzano v. S.D. Dep't of Soc. Servs., 60 F.3d 505, 511 (8th Cir. 1995).   Because of the balancing test between the government's interest and the parent's interest, it is almost impossible to analyze separately the questions of whether there was a violation of a constitutional right and whether the right was clearly established.   Id. at 510.   Demonstrating a "clearly established" parental right in the context of a child abuse

investigation is exceedingly difficult.   Thomason v. Scan Volunteer Servs., Inc., 85 F.3d 1365, 1371 (8th Cir. 1996).

The factual record before the Court clearly shows that Pumroy's and Lindorfer's suspicions of child abuse were reasonable, even without Laura's purported statements that her father hit or burned her.   The physical evidence – visible marks resembling cigarette burns, abrasions, and bruises – alone was sufficient to establish a reasonable suspicion of abuse or neglect.   Consequently, the actions of Pumroy and Lindorfer in reporting their suspicions to the St. Paul Police Department were appropriate under the circumstances.   Lindorfer and Pumroy are entitled to qualified immunity on the substantive due process claim.

   c. <u>Plaintiffs' Procedural Due Process Claim</u>

In their Complaint, Plaintiffs allege that Pumroy and Lindorfer directed the seizure of Laura and caused her to be transported to Children's Hospital without any notice or process. Plaintiffs further allege that Pumroy and Lindorfer violated Plaintiffs' right to procedural due process by failing to obtain an emergency guardianship order or a warrant.   Pumroy and Lindorfer acted under Minn. Stat. § 626.556 in reporting their suspicions to the St. Paul Police Department.   The Eighth Circuit has explicitly endorsed the procedural protections of this reporting statute.   <u>Bohn</u>, 772 F.2d at 1436-39 (applying the three factors enunciated in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976) and concluding that § 626.556 did not violate due process).   Additionally, in <u>Myers v. Morris</u>, the Eighth Circuit held that § 626.556 did not confer "any constitutionally protected right asserted by the plaintiffs," which included claims under the Fourth Amendment, the substantive due process clause, and the procedural due

process clause.  810 F.2d at 1469.  Here, the Court must conclude that Pumroy and Lindorfer did not deprive Plaintiffs of procedural due process by filing a statutorily mandated report of suspected abuse.  Furthermore, Plaintiffs cite no authority to support their claim that Pumroy and Lindorfer should have obtained an emergency guardianship order or a warrant, and the Court has found none.  Lindorfer and Pumroy are entitled to qualified immunity on the procedural due process claim.

Although Plaintiffs do not allege in the Complaint that Laura's due process rights were violated by Pumroy's and Lindorfer's failure to question her through a Hmong interpreter, Plaintiffs do include this argument in their Memorandum in Opposition.  This is clearly not a violation of Plaintiffs' constitutional rights.  Laura conversed exclusively in English at school, and there is no evidence that Lindorfer and Pumroy should have used a Hmong interpreter.  In addition, Plaintiffs concede that Defendants' failure to use an interpreter was negligent at most.  (Pls.' Mem. Opp'n Mot. Summ. J. at 13.)  Negligence does not establish a violation of the Fourteenth Amendment.  Jane Doe A. v. Special Sch. Dist., 901 F.2d 642, 645 (8th Cir. 1990) (citing Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986)).  Lindorfer and Pumroy did not violate Laura's procedural due process rights by failing to use an interpreter, and they are entitled to qualified immunity on this claim as well.

2.    Statutory Immunity for Lindorfer and Pumroy

Lindorfer and Pumroy are also entitled to statutory immunity under Minn. Stat. § 626.556, subd. 4(d), on all of Plaintiffs' claims.  These Defendants were statutorily mandated to report their belief that Laura may have been physically abused.  Id., subd. 3(a)(1).  As such,

they are immune from civil liability unless they did not act in good faith. Plaintiffs have provided no evidence that either Lindorfer or Pumroy acted in bad faith in reporting their suspicions of abuse, and they are entitled to statutory immunity.

3.    Qualified Immunity for Officer Norris

a.    Fourth Amendment Claim

The actions of Officer Norris present a closer question than those of the school district defendants. After viewing Laura's wounds, Officer Norris concluded that some of the sores resembled cigarette burns and others were consistent with abuse. Although Laura later denied telling the officer that her father hit her with a belt and burned her, Officer Norris also had a statement from Pumroy that Laura had told Pumroy that her father had hit and burned her. Viewing the facts in the light most favorable to Plaintiffs, there is no evidence that Pumroy did not make this statement to Officer Norris. Even assuming the statement was false, Officer Norris could not have known that at the time. He was obligated to consider all the evidence before him: the physical evidence, Laura's statements or lack thereof, and Pumroy's statement. Based on this evidence, Officer Norris concluded Laura's health or welfare was immediately endangered, and he took Laura from school to a hospital where she was examined by a doctor. After the examination, Officer Norris took Laura to a shelter for a seventy-two hour health and welfare hold.

Officer Norris's actions unquestionably constitute a seizure, and he has not argued to the contrary. However, Officer Norris did not "search" Laura. Her wounds were visible in plain view, and the medical staff at Children's Hospital performed the physical examination.

In determining the reasonableness of the seizure, the Court must consider the government's significant interest in protecting children. Roska v. Peterson, 328 F.3d 1230, 1242 (10th Cir. 2003). The state's interest must be balanced with parental interest in family

15

integrity.  See id.  Here, unlike the child in Roska, Laura was removed from school, not her home.  In addition, Officer Norris acted pursuant to a state statute which permits an officer to take a child into immediate custody if he finds the child in "surroundings or conditions which endanger the child's health or welfare or which such peace officer reasonably believes will endanger the child's health or welfare."  See  Minn. Stat. § 260C.175, subd. 1(b)(2).[3]  In the Detention Report, Officer Norris indicated that he believed Laura's health and welfare were immediately endangered.  He documented his inspection of her wounds and Pumroy's statement to him that Laura had said her father hit her with a belt and burned her.  Even if Pumroy's statement to the officer was not true, Officer Norris could not have known that at the time he made the decision to remove Laura from school, and it was not unreasonable to believe Pumroy's version of what Laura said.  Additionally, hospital records show that Officer Norris arrived with Laura at 3:00 p.m., near the end of the school day.  This timing supports Officer Norris's finding that immediate action was needed, as Laura would have soon left the school for home.  Based on the circumstances, the Court finds that Officer Norris had probable cause to seize Laura, and his actions were reasonable.  Accordingly, Plaintiffs have not established a violation of the Fourth Amendment, and Officer Norris is entitled to qualified immunity on this claim.

Even if Officer Norris had violated the Fourth Amendment in seizing Laura, however, the Court finds that the asserted right was not clearly established at the time of the incident.

---

[3]  Plaintiffs have not challenged the constitutionality of the procedures set forth in § 260C.175.

Plaintiffs have cited no authority from the Supreme Court, Eighth Circuit, or District of Minnesota on this point.    Officer Norris believed he was following Minnesota statutory requirements in removing Laura from the school, transporting her to the hospital, and placing her in a temporary shelter.    Plaintiffs must show that the contours of Laura's Fourth Amendment right were so clear that an objectively reasonable officer would understand that his actions violated that right.  In <u>Myers v. Morris</u>, the Eighth Circuit stated:

> [T]he parental liberty interest in keeping the family unit intact is not a clearly established right in the context of reasonable suspicion that parents may be abusing children.    If law enforcement personnel who have at least arguable probable cause to believe that adults have been molesting children are not entitled to reasonable belief that the adults may pose a danger to their own children, then the law was (and is) not clearly established on this point.

810 F.2d at 1463.    This reasoning is equally applicable in the Fourth Amendment context. Officer Norris had at least arguable probable cause to believe Laura was being abused, and consequently, a reasonable belief that Laura was in danger, especially if she was permitted to return home after school.    The scope of the Fourth Amendment's protection in child abuse investigations when the child is removed from school for a medical examination and temporary placement in a shelter is not clearly established.    Plaintiffs have not argued to the contrary or provided any authority that would support this position.    Thus, Officer Norris is protected by qualified immunity, and Plaintiffs' Fourth Amendment claim fails on this basis as well.

        b.    <u>Substantive Due Process Claim</u>

Plaintiff Yang alleges his right to custody of Laura and to make medical decisions for her was violated when she was taken to Children's Hospital, examined, and placed in a

temporary shelter.   The Court must balance the government's interest in protecting children against the parental liberty interest in the care and custody of their children.   Officer Norris will be entitled to qualified immunity if his actions were based on "a reasonable suspicion of child abuse." Manzano, 60 F.3d at 511.

Officer Norris based his suspicion of child abuse on the burns and abrasions he saw on Laura's body as well as Pumroy's statement.   The factual record demonstrates that Officer Norris's suspicion of abuse was reasonable, even without Laura's alleged statements to the officer.   The physical evidence alone would be sufficient, but Officer Norris also based his suspicion on Pumroy's statement.   Even assuming the statement was not true, Officer Norris had no way of knowing that at the time he founded his suspicion of abuse.   Thus, Officer Norris's actions were based on a reasonable suspicion of child abuse, and he is entitled to qualified immunity on the substantive due process claim.

As with the Fourth Amendment analysis, Plaintiffs' substantive due process claim also fails because they have not shown that Officer Norris violated a clearly established right.   A parent's liberty interest in keeping his family together is not clearly established when there is a reasonable suspicion of abuse. Myers, 810 F.2d at 1463.   As discussed above, Officer Norris had a reasonable suspicion of child abuse, and he is protected by qualified immunity on this basis as well.

      c.     Procedural Due Process

Plaintiffs fault Officer Norris for not following Minn. Stat. § 260C.148, which sets forth procedures a welfare agency must follow in situations involving suspected child abuse.

However, Plaintiffs have not sued the relevant welfare agency, the Ramsey County Human Services Department, and this statute is not applicable to Officer Norris. Moreover, state statutes do not confer protected rights under the U.S. Constitution, and a violation of § 260C.148 would be irrelevant to the determination of qualified immunity. See In re Scott County Master Docket, 672 F. Supp. 1152, 1174 (D. Minn. 1987) (MacLaughlin, J.).

Next, Plaintiffs aver that Officer Norris violated Minn. Stat. § 260C.175, which requires an officer who takes a child into immediate custody to give notice to the parent that the child may be placed with a relative or designated caregiver instead of a shelter. Minn. Stat. § 260C.175, subd. 2. Officer Norris's Detention Report shows that he called Laura's home to notify her parents of her placement in a shelter, but no one answered the telephone and there were no means by which to leave a message. First, Plaintiffs have identified no authority holding that § 260C.175 confers protected rights under the U.S. Constitution. Second, Plaintiffs have not shown that the notification requirements are clearly established rights under federal law. Third, Plaintiffs have no evidence that Officer Norris's actions amount to anything more than mere negligence, which is insufficient to establish a violation of procedural due process. See Myers, 810 F.2d at 1468-69 (citing Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986)). It is indeed unfortunate that Officer Norris did not go to Laura's residence to give her parents a list of social services agencies offering welfare services, as required by § 260C.175, subd. 2, but Plaintiffs have failed to show that Officer Norris's actions violated their procedural due process rights under the U.S. Constitution.

Plaintiffs also assert that Officer Norris was negligent in failing to use a Hmong interpreter when speaking with Laura.   As previously discussed, negligent acts are insufficient to establish a constitutional violation.   Moreover, when an officer interviews a child, the question "is whether the specific interrogation conduct identified in the record 'so exceeded accepted legal norms for the questioning of witnesses and victims that the interrogating detectives knew or should have known their conduct would violate the rights of accused persons.'" In Re Scott County, 672 F. Supp. at 1177 (quoting Myers, 810 F.2d at 1458).   Here, the record is clear that Laura is able to speak English.   She spoke English exclusively at school; she spoke English at home with her brothers and sisters; and her deposition was conducted in English.   The Report of Suspected Maltreatment and the hospital records indicate that any difficulty in communicating with Laura was due to her developmental delays.   Plaintiffs have not provided any evidence that Officer Norris should have known to use a Hmong interpreter. Accordingly, the Court finds that Officer Norris did not violate Laura's procedural due process rights by speaking with her in English, and Officer Norris is entitled to qualified immunity on this claim.

4.      Plaintiffs' § 1983 Claims Against the City of St. Paul and the St. Paul Public Schools

Plaintiffs do not explicitly assert a Monell claim, but their claims against the City of St. Paul and the St. Paul Public Schools must be construed as such to even arguably survive summary judgment.   A Fourteenth Amendment claim may not be brought against a municipality directly but must be brought pursuant to § 1983.   Wax 'n Works v. City of St. Paul, 213 F.3d

1016, 1019 (8th Cir. 2000) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989)).

Because Plaintiffs allege in the Complaint that Defendants acted "under color of law" with

respect to the Fourth Amendment claim, the Court will analyze that claim under § 1983.

A municipality may be liable under § 1983.   Monell v. Dep't of Soc. Servs. of New

York, 436 U.S. 658, 694-95 (1978).   However, a municipality cannot be liable under the

respondeat superior theory.   Id.   Rather, the municipality must employ a policy or custom that

"inflicts the injury" on the plaintiff.   Id.   A municipal custom or policy requires Plaintiffs to

demonstrate: (1) the existence of a continuing, persistent, widespread pattern of

unconstitutional misconduct by the entity's employees; (2) deliberate indifference to or

authorization of unconstitutional conduct by the entity's policymaking officials after notice

to the officials of the purported misconduct; and (3) that Plaintiffs were injured by acts

pursuant to the policy, which was the moving force behind the violation.   See Mettler v.

Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999).   In addition, before a municipality may be

held liable, there must be unconstitutional conduct by an employee.   Avalos v. City of

Glenwood, 382 F.3d 792, 802 (8th Cir. 2004).

Plaintiffs simply have no evidence of any injurious policy or custom, any pattern of

unconstitutional misconduct, or any deliberate indifference or authorization of

unconstitutional conduct by the City of St. Paul.   In addition, Plaintiffs have not shown any

unconstitutional act of a City employee.   Thus, all of their federal claims against the City of

St. Paul fail as a matter of law.

21

To establish liability against the St. Paul Public Schools, Plaintiffs must show that the school district "had a policy or custom of failing to adequately receive, investigate, and act upon prior complaints" of Lindorfer's and Pumroy's alleged misconduct.   Jane Doe A., 901 F.2d at 645 (citing Monell, 436 U.S. at 694).   Plaintiffs have no evidence of any such policy or custom, or of an unconstitutional act by a school employee.   Consequently, all federal claims against the St. Paul Public Schools fail as a matter of law.

**E.      State Law Claims**

Plaintiffs aver that Defendants' actions also violated their rights under the Minnesota Constitution.   Because Plaintiffs' federal claims fail, the Court declines to exercise supplemental jurisdiction over these state law claims.   See 28 U.S.C. § 1367(c)(3).   The state law claims are accordingly dismissed without prejudice.

**F.      Attorneys' Fees for the School District Defendants as Prevailing Parties**

Pumroy, Lindorfer, and the St. Paul Public Schools have requested an award of attorneys' fees and costs pursuant to Minn. Stat. § 626.556, subd 4(d).   These Defendants are permitted to bring a motion on this issue under D. Minn. LR 54.3.

**CONCLUSION**

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      The St. Paul Police Department is **DISMISSED** as a party;

22

2.     Defendant City of St. Paul's Motion for Summary Judgment (Clerk Doc. No. 30) is **GRANTED** on all of Plaintiffs' federal claims against Defendants City of St. Paul and Officer Yusuf Norris;

3.     Defendants St. Paul Public Schools, Jeri Pumroy, and Dorette Lindorfer's Motion for Summary Judgment (Clerk Doc. No. 32) is **GRANTED** on all of Plaintiffs' federal claims against these Defendants;

4.     Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**; and

5.      Plaintiffs' Motion to Accept Untimely Filing of Plaintiffs' Opposition to Defendants' Motions for Summary Judgment (Clerk Doc. No. 72) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: October 13, 2005

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge